IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| NATHANIEL HEARN, | ) | |
| Petitioner, | ) ) | |
| v. | ) ) | CIV 08-00448 PHX MHM (MEA) |
| DORA SCHRIRO and ARIZONA ATTORNEY GENERAL, | ) ) ) | REPORT AND RECOMMENDATION |
| Respondents. | ) ) | |

TO THE HONORABLE MARY H. MURGUIA:

On or about March 6, 2008, Petitioner filed a *pro se* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondents filed an Answer to Petition for Writ of Habeas Corpus ("Answer") (Docket No. 15) on October 10, 2008. Petitioner filed a reply to the answer on February 10, 2009. See Docket No. 18.

**I Procedural History**

In the instant habeas petition, Petitioner challenges his conviction in Maricopa County Superior Court docket number CR2004-006251. On January 23, 2004, Petitioner was charged by an indictment with one count of misdemeanor shoplifting, one felony count of armed robbery, and one felony count of unlawful flight from a law enforcement vehicle. See Answer, Exh. A. The indictment was amended to allege prior felony convictions and

that Petitioner committed the crimes while on supervised release. Id., Exh. A.

The state later alleged further aggravating circumstances, *inter alia*, the threat of injury and possession of a weapon. Id., Exh. A. The state further alleged the aggravating circumstances of multiple victims, evasion of law enforcement, and a lengthy criminal history. Id., Exh. A. Prior to trial the state dismissed the shoplifting charge. See id., Exh. A.

Petitioner chose to represent himself in his criminal proceedings on or about April 12, 2004, and the trial court appointed advisory counsel. Id., Exh. A.

On the third day of Petitioner's jury trial the jury received its instructions and court was recessed for the jury to begin deliberations. Id., Exh. K. At the end of the day the jury informed the trial court that it would resume deliberations the following morning. Id., Exh. A. The following day the jury resumed deliberations at 9:35 a.m. Id., Exh. A. At 10:55 a.m. the jury sent the trial court a note stating: "Can not agree on armed robbery. Need assistance!" Id., Exh. A at 122 & 135. A minute entry indicates that the trial court consulted with the prosecutor and Petitioner's advisory counsel regarding the note; Petitioner was not present at the conference. Id., Exh. A.

At 11:30 a.m., the trial court responded to the jury:

I need a lot more guidance from you on the basis of the impasse. The instructions are clear as to how you should deliberate on both counts and in the event there's an impasse. Moreover, your note says nothing about the

-2-

offense of unlawful flight or the lesser
included offense of robbery.

Id., Exh. A at 122.

Approximately twenty minutes later the jury sent a note to the trial court stating: "Agreement on flight & robbery (lesser offense). Disagreement on credibility of witnesses regarding the existence of weapon. What further assistance can you provide?" Id., Exh. A at 121.

Petitioner was not present for the ensuing discussion between the trial court, Petitioner's advisory counsel, and the prosecutor, regarding this jury note. Id., Exh. A at 135. The trial court responded to the jury's second note:

> Based on your response, you've reached a verdict on the unlawful flight charge as well as the lesser included offense of robbery. Because you disagree on armed robbery given your perception of the witness' credibility, you can find the lesser included offense of robbery without having to reach a verdict on armed robbery. A verdict form will be modified to be consistent with the jury instruction on the lesser included offense of robbery.

Id., Exh. A at 121. The judge sent this response to the jury at 1:28 p.m. Id., Exh. B.

The parties, i.e., the prosecutor and Petitioner's advisory counsel, did not request a court reporter be present for the in-chamber proceedings regarding the jury's communications. Id., Exh. B at 17. The trial court went back on the record at 1:50 p.m. Id., Exh. L. Petitioner, his advisory counsel, and the state were all present when the trial court went back on the record. Id., Exh. L. At that time the

-3-

trial court addressed Petitioner and noted that Petitioner had been "kept abreast" of the proceedings by his advisory counsel. Id., Exh. L at 4.

The trial judge informed Petitioner that the jury had submitted two questions. The trial court told Petitioner there was "nothing" said in response to the jury's questions "other than what was in the instructions." Id., Exh. L at 4. The trial judge informed Petitioner that he believed the jury had reached a verdict on the lesser included offense of robbery because they could not reach a verdict on the offense of armed robbery. The trial court further told Petitioner that the jury had been provided a form of verdict allowing for a hung jury on the charge of armed robbery. Id., Exh. L at 3-4.

The bailiff then interrupted the proceeding to notify the court that the jury had reached a verdict. Id., Exh. L at 4. At that time Petitioner stated that he had not been notified of the second jury question or of the trial court's second response. Id., Exh. L at 5. Petitioner asked if the trial court intended to further instruct the jury on the armed robbery charge notwithstanding that the jury had reached a verdict. Id., Exh. L at 8.

The trial court advised Petitioner, and the prosecutor allowed, that Petitioner's acquiescence to the entry of a verdict on the lesser charge, i.e., robbery, would preclude a retrial on the greater offense, i.e., armed robbery. Id., Exh. L at 6-7. They noted that the alternative, requiring the jury to deliberate further, might result in the jury's finding that

-4-

they were unable to reach a verdict on armed robbery, allowing for Petitioner to be retried and possibly convicted of the greater offense. <u>Id.</u>, Exh. L at 8-10. Petitioner then acquiesced to the trial court's taking of the verdict at that time, i.e., without further instruction to the jury. <u>Id.</u>, Exh. L at 10.

Accordingly, on September 30, 2004, the jury returned a verdict of guilty of the lesser-included offense of robbery, rather than armed robbery, and guilty of unlawful flight. <u>Id.</u>, Exh. A. After aggravation proceedings, conducted that same day, the jury concluded Petitioner committed the offenses while on release and also found Petitioner had prior convictions. <u>Id.</u>, Exh. A.

Petitioner filed a motion for a new trial. In that motion Petitioner argued that the trial court violated his right to due process by failing to have him present during a critical stage of the proceedings, citing <u>Snyder v. Massachusetts</u> and <u>Faretta v. California</u>. <u>Id.</u>, Exh. A at 138.

In denying the motion, the trial court concluded:

> [T]he defendant's presence in answering the jury's question during deliberations was not necessary for 2 reasons. First, both the prosecution and defendant's liaison counsel were present. In light of the response the Court indicated it was going to make to the jury's question, neither counsel nor the Court felt that the defendant's presence was required. Second, the court did not answer the question, but, rather, simply directed the jury to rely on the evidence presented in reaching the ultimate determination of the issue.

<u>Id.</u>, Exh. A at 148.

1    On March 22, 2005, in Maricopa County docket number
2 CR2004-006251, Petitioner was sentenced to a twelve-year term
3 of imprisonment pursuant to his conviction for robbery and a
4 concurrent six-year term of imprisonment pursuant to his
5 conviction on the charge of unlawful flight from a law
6 enforcement vehicle. Id., Exh. A. Both sentences were ordered
7 to run consecutively to sentences of incarceration imposed in
8 2002 and 2003 in separate criminal proceedings. Id., Exh. A.

9    Petitioner took a direct appeal of his convictions and
10 sentences. Id., Exh. B. Petitioner was represented by
11 appointed counsel in his direct appeal. Id., Exh. B. In his
12 direct appeal Petitioner asserted the trial court denied
13 Petitioner's right to due process and his right to
14 self-representation when it convened with the prosecutor and
15 advisory counsel, in Petitioner's absence, to consider the jury
16 notes. Petitioner also alleged the trial court erred by failing
17 to credit Petitioner for an additional 133 days of pre-sentence
18 incarceration. Id., Exh. B.

19    On October 24, 2006, the Arizona Court of Appeals
20 affirmed Petitioner's convictions, although it modified his
21 presentence incarceration credit. Id., Exh. C. Citing state
22 law and Faretta v. California, the Arizona Court of Appeals
23 stated "Erroneous denial of self-representation in a criminal
24 case is structural error." Id., Exh. C. Citing McKaskle v.
25 Wiggins, the Arizona Court of Appeals concluded Petitioner's
26 constitutional rights were not violated. Id., Exh. C. The
27 court noted "when a self-representing defendant allows standby

28                                -6-

counsel to directly participate in a particular proceeding without objection, the defendant retains no right to claim he was not allowed to direct his defense." Id., Exh. C. The Court of Appeals concluded the McKaskle standard was satisfied because Petitioner had

> an opportunity to see and object to the form or make other objections ... Hearn later informed the court he understood the appropriateness of the jury instruction, the process the jury had gone through to make a decision, and that he was prepared for the jury to be called. Hearn was given ample opportunity to present his own position to the court.

Id., Exh. C.

The Court of Appeals also concluded that Petitioner's due process right to be present at critical stages of his criminal proceedings was not violated. The Court of Appeals noted that, absent fundamental error, a defendant could waive the right to be present by failing to object. The appellate court concluded "Hearn did not object to his absence when given an opportunity to do so." Id., Exh. C. The Court of Appeals concluded Petitioner had waived any objection to his absence from the chambers conferences and that, additionally, "he ratified the decisions made in consultation with his advisory counsel." Id., Exh. C. Furthermore, the Court of Appeals held that any error was not reversible because Petitioner was not prejudiced by the court's communication with the jury. Id., Exh. C.

On April 12, 2007, the Arizona Supreme Court summarily denied review of the Court of Appeals' decision. Id., Exh. D.

1    Petitioner initiated an action for state post-
2  conviction relief pursuant to Rule 32, Arizona Rules of Criminal
3  Procedure, which was initially dismissed for failure to
4  prosecute. See id., Exh. E. The action was re-opened and again
5  dismissed, because the time limit for filing a brief stating
6  Petitioner's claims for relief passed and Petitioner failed to
7  file such a pleading. See id., Exh. G, Exh. H, Exh. I.

8    In his federal habeas petition, Petitioner asserts his
9  federal constitutional right to self-representation and his
10 right to be present were violated when the trial court conferred
11 with Petitioner's advisory counsel, but not Petitioner,
12 regarding two questions posed by the deliberating jury.
13 Petitioner also asserts his sentences were illegal because his
14 crime did not involve a threat of violence and because the state
15 violated his right to due process by presenting aggravating
16 circumstances to a jury. Additionally, Petitioner maintains he
17 is entitled to habeas relief because, he alleges, jail
18 authorities abridged his right to access the courts during his
19 criminal proceedings.

20    **II Analysis**
21    **A. Exhaustion**

22    The District Court may not grant federal habeas relief
23 on the merits of a claim which was not exhausted in the state
24 courts. See O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S.
25 Ct. 1728, 1731 (1999); Coleman v. Thompson, 501 U.S. 722, 729-
26 30, 111 S. Ct. 2546, 2554-55 (1991). To properly exhaust a
27 federal habeas claim, the petitioner must afford the state the

28                              -8-

opportunity to rule upon the merits of the claim by "fairly presenting" the claim to the state's "highest" court in a procedurally correct manner. See, e.g., Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989); Rose v. Palmateer, 395 F.3d 1108, 1110 (9th Cir. 2005).

The Ninth Circuit Court of Appeals has concluded that, in non-capital cases arising in Arizona, the "highest court" test of the exhaustion requirement is satisfied if the habeas petitioner presented his claim to the Arizona Court of Appeals, either on direct appeal or in a petition for post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999). See also Crowell v. Knowles, 483 F. Supp. 2d 925, 932 (D. Ariz. 2007) (providing a thorough discussion of what constitutes the "highest court" in Arizona for purposes of exhausting a habeas claim in the context of a conviction resulting in a non-capital sentence).

## B. Procedural default

A federal habeas petitioner has not exhausted a federal habeas claim if he still has the right to raise the claim "by any available procedure" in the state courts. 28 U.S.C. § 2254(c) (1994 & Supp. 2009). Because the exhaustion requirement refers only to remedies still available to the petitioner at the time they file their action for federal habeas relief, it is satisfied if the petitioner is procedurally barred from pursuing their claim in the state courts. See Woodford v. Ngo, 548 U.S. 81, 92-92, 126 S. Ct. 2378, 2387 (2006); Castille, 489 U.S. at 351, 109 S. Ct. at 1060. If it is clear the habeas petitioner's

-9-

claim is procedurally barred pursuant to state law, the claim is exhausted by virtue of the petitioner's "procedural default" of the claim. See, e.g., Woodford, 548 U.S. at 92-93, 126 S. Ct. at 2387. Procedural default occurs when a petitioner has never presented a federal habeas claim in state court and is now barred from doing so by the state's procedural rules, including rules regarding waiver and the preclusion of claims. See Castille, 489 U.S. at 351-52, 109 S. Ct. at 1060; Tacho v. Martinez, 862 F.2d 1376, 1378 (9th Cir. 1988).

Because the Arizona Rules of Criminal Procedure regarding timeliness, waiver, and the preclusion of claims bar Petitioner from now returning to the state courts to exhaust any unexhausted federal habeas claims, Petitioner has exhausted, but procedurally defaulted, any claim not previously fairly presented to the Arizona courts. See Insyxiengmay v. Morgan, 403 F.3d 657, 665 (9th Cir. 2005); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002). See also Stewart v. Smith, 536 U.S. 856, 860, 122 S. Ct. 2578, 2581 (2002) (holding Arizona's state rules regarding the waiver and procedural default of claims raised in attacks on criminal convictions are adequate and independent state grounds for affirming a conviction and denying federal habeas relief on the grounds of a procedural bar); Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998).

Review of the merits of a procedurally defaulted habeas claim is required if the petitioner demonstrates review of the merits of the claim is necessary to prevent a fundamental miscarriage of justice. See Dretke v. Haley, 541 U.S. 386, 393,

124 S. Ct. 1847, 1852 (2004); Schlup v. Delo, 513 U.S. 298, 316, 115 S. Ct. 851, 861 (1995); Murray v. Carrier, 477 U.S. 478, 485-86, 106 S. Ct. 2639, 2649 (1986). A fundamental miscarriage of justice occurs only when a constitutional violation has probably resulted in the conviction of one who is factually innocent. See Murray, 477 U.S. at 485-86, 106 S. Ct. at 2649; Coley v. Gonzales, 55 F.3d 1385, 1387 (9th Cir. 1995) (showing of factual innocence is necessary to trigger manifest injustice relief). To satisfy the "fundamental miscarriage of justice" standard, a petitioner must establish by clear and convincing evidence that no reasonable fact-finder could have found him guilty of the offenses charged. See Dretke, 541 U.S. at 393, 124 S. Ct. at 1852; Wildman v. Johnson, 261 F.3d 832, 842-43 (9th Cir. 2001).

## C. Standard of review regarding exhausted claims

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision contrary to clearly established federal law, or the state court decision was an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d) (1994 & Supp. 2009); Carey v. Musladin, 549 U.S. 70, 75, 127 S. Ct. 649, 653 (2006); Musladin v. Lamarque, 555 F.3d 834, 838 (9th Cir. 2009).

Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. See Miller-El v. Dretke, 545 U.S. 231, 239-40, 125 S.

Ct. 2317, 2325 (2005); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003) (holding the court must presume that state court's factual findings are correct and may not reverse a state court's factual finding "absent clear and convincing evidence" that the finding is "objectively unreasonable."); <u>Stenson v. Lambert</u>, 504 F.3d 873, 881 (9th Cir. 2007), <u>cert.</u> <u>denied</u>, 129 S. Ct. 247 (2008); <u>Anderson v. Terhune</u>, 467 F.3d 1208, 1212 (9th Cir. 2006); <u>Solis v. Garcia</u>, 219 F.3d 922, 926 (9th Cir. 2000) ("The state court's factual findings are entitled to a presumption of correctness unless the petitioner rebuts the presumption with clear and convincing evidence."). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." <u>Sumner v. Mata</u>, 455 U.S. 591, 593, 102 S. Ct. 1303, 1304-05 (1982).

### The "contrary to federal law" test

A state court decision is contrary to federal law if it applied a rule contradicting the governing law of Supreme Court opinions, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. <u>See</u> <u>Brown v. Payton</u>, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438 (2005); <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663, 124 S. Ct. 2140, 2149 (2004); <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519 (2000). For example, a state court's decision is considered "contrary to federal law" if the state court erroneously applied the wrong standard of review or an incorrect test to a claim. <u>See</u> <u>Knowles</u>

-12-

v. Mirzayance, 129 S. Ct. 1411, 1419 (2009) (stating the Ninth Circuit Court of Appeals erred in finding a habeas petitioner entitled to relief on an ineffective assistance of counsel claim because the Ninth Circuit should not have reversed the state court based on its failure to apply a "nothing to lose" test to a claim properly analyzed pursuant to Strickland v. Washington); Wright v. Van Patten, 552 U.S. 120, 128 S. Ct. 743, 746-47 (2008). See also Frantz v. Hazey, 533 F.3d 724, 737 (9th Cir. 2008) (en banc); Bledsoe v. Bruce, 569 F.3d 1223, 1233 (10th Cir. 2009).

### The "unreasonable application" test

"A state determination may be set aside under this standard if, under clearly established federal law, the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." Ramdass v. Angelone, 530 U.S. 156, 166, 120 S. Ct. 2113, 2120 (2000). However, the state court's decision is an unreasonable application of clearly established federal law only if it can be considered *objectively unreasonable*. Williams, 529 U.S. at 409, 120 S. Ct. at 1521;. An unreasonable application of law is different from an incorrect one. See Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850 (2002); Cooks v. Newland, 395 F.3d 1077, 1080 (9th Cir. 2005). Furthermore, only United States Supreme Court holdings, and not dicta or concurring opinions, at the time of the state court's decision are the source of "clearly established federal law" for the purpose of the "unreasonable application" prong of federal

-13-

habeas review. <u>Williams</u>, 529 U.S. at 412, 120 S. Ct. at 1523; <u>Carey</u>, 549 U.S. at 74, 127 S. Ct. at 653. Unless United States Supreme Court precedent has clearly established a rule of law, the writ will not issue based on a claimed violation of that rule, <u>see</u> <u>Alvarado v. Hill</u>, 252 F.3d 1066, 1069 (9th Cir. 2001), because federal courts are "without the power" to extend the law beyond Supreme Court precedent. <u>See</u> <u>Dows v. Wood</u>, 211 F.3d 480, 485 (9th Cir. 2000).[1]

Accordingly, if the Supreme Court has not addressed a specific issue in its holdings, the state court's adjudication of the issue cannot be an unreasonable application of clearly established federal law. <u>See</u> <u>Stenson</u>, 504 F.3d at 881, <u>citing</u> <u>Kane v. Garcia Espitia</u>, 546 U.S. 9, 10, 126 S. Ct. 407, 408 (2006).[2] Stated another way, if the issue raised by the

---

[1] The Ninth Circuit Court of Appeals has stated: "A state court's decision may be an 'unreasonable application' of Federal law if it 'extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.' <u>Hernandez v. Small</u>, 282 F.3d 1132, 1142 (9th Cir. 2002)." <u>Cook v. Schriro</u>, 538 F.3d 1000, 1015 (9th Cir. 2008), <u>cert.</u> <u>denied</u>, 129 S. Ct. 1033 (2009).

[2]

> The federal appellate courts have split on whether Faretta, which establishes a Sixth Amendment right to self-representation, implies a right of the pro se defendant to have access to a law library.[]. That question cannot be resolved here, however, as it is clear that Faretta says nothing about any specific legal aid that the State owes a pro se criminal defendant. The ... court below therefore erred in holding, based on Faretta, that a violation of a law library access right is a basis for federal habeas relief.

<u>Kane v. Garcia Espitia</u>, 546 U.S. 9, 10-11, 126 S. Ct. 407, 408-09 (2005).

petitioner "is an open question in the Supreme Court's jurisprudence," the District Court may not issue a writ of habeas corpus on the basis that the state court unreasonably applied clearly established federal law by rejecting the precise claim presented by the petitioner. Cook v. Schriro, 538 F.3d 1000, 1016 (9th Cir. 2008), cert. denied, 129 S. Ct. 1033 (2009); Crater v. Galaza, 491 F.3d 1119, 1123 (9th Cir. 2007), cert. denied, 128 S. Ct. 2961 (2008). The United States Supreme Court "has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles, 129 S. Ct. at 1419, citing Wright, 128 S. Ct. at 746.[3]

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by this Court 'refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision.'" Yarborough, 541 U.S. at 660-61, 124 S. Ct. at 2147, quoting Williams, 529 U.S. at 412, 120 S. Ct. at 1523.

---

[3]

> Our cases provide no categorical answer to this question, and for that matter the several proceedings in this case hardly point toward one. The Wisconsin Court of Appeals held counsel's performance by speaker phone to be constitutionally effective; neither the Magistrate Judge, the District Court, nor the Seventh Circuit disputed this conclusion; and the Seventh Circuit itself stated that "[u]nder Strickland, it seems clear Van Patten would have no viable claim." Deppisch, 434 F.3d, at 1042.

Wright v. Van Patten, 552 U.S. 120, 128 S. Ct. 743, 746-47 (2008).

-15-

The holdings of the Circuit Courts of Appeal are relevant to resolution of a petitioner's habeas claims only to the extent they are useful in deciding whether the law has clearly been established or that the state court decision is an "unreasonable application" of United States Supreme Court precedent, and not with regard to what constitutes a violation of constitutional rights. See Bible v. Ryan, 571 F.3d 860, 870 (9th Cir. 2009); Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003) ("While circuit law may be persuasive authority for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law ... only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." (citations omitted)); Ortiz-Sandoval v. Clarke, 323 F.3d 1165, 1172 (9th Cir. 2003) ("Because [the] AEDPA limits habeas relief to state decisions that offend 'clearly established' federal law as set by the Supreme Court, a state court decision may not be overturned simply because of a conflict with circuit law."). Compare Smith v. Dinwiddie, 510 F.3d 1180, 1186 (10th Cir. 2007).

Accordingly, a state court decision may be contrary to a Ninth Circuit Court of Appeals' holding without being an unreasonable application of United States Supreme Court precedent. See Kessee v. Mendoza Powers, 574 F.3d 675, 679 (9th Cir. 2009) (holding it could not find a state court decision contrary to or an unreasonable application of Supreme Court precedent where the Supreme Court had not directly addressed the

issue and Ninth Circuit precedent differed from that of the other Circuit Courts of Appeal on the issue). The Ninth Circuit recently held that when a Supreme Court decision does not "squarely address" the issue presented by the habeas petitioner, or if the Supreme Court principle does not "clearly extend" to the context of the situation presented by the petitioner, "it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue." Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009).[4]

If the Court finds that the state court's decision was an unreasonable application of Supreme Court precedent, habeas relief is not automatically warranted. In that situation the Court must determine whether Petitioner's constitutional rights were violated without the deference to the state court's decision that the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires. See Panetti v. Quarterman, 551 U.S. 930, 952-53, 127 S. Ct. 2842, 2858-59 (2007); Rompilla v. Beard, 545 U.S. 374, 390, 125 S. Ct. 2456, 2467-68 (2005). See also Larson v. Palmateer, 515 F.3d 1057, 1061-62 (9th Cir.), cert. denied, 129 S. Ct. 171 (2008).

---

[4] If the Court's decisions do provide a "controlling legal standard," Panetti, 127 S. Ct. at 2858, that is applicable to the claims raised by a habeas petitioner without "tailoring or modification" of the standard, the question is then whether the application of that standard was objectively unreasonable, even if the facts of the case at issue are not identical to the Supreme Court precedent.
Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009).

-17-

**D. Petitioner's claims for relief.**

Petitioner never properly exhausted any specific claims for relief in a properly filed action for state post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure. Accordingly, the only federal habeas claim properly exhausted in the state courts was any claim presented to the Arizona Court of Appeals in Petitioner's direct appeal. Therefore, the only claim in the federal habeas petition which was properly exhausted by Petitioner is his claim that the trial court denied Petitioner's right to due process and the right to self-representation when it convened with the prosecutor and advisory counsel, but in Petitioner's absence, in order to consider communications from the deliberating jury.

Petitioner asserts he is entitled to habeas relief because the trial court violated his constitutional rights when it convened with the prosecutor and advisory counsel, in Petitioner's absence, in order to consider communications from the deliberating jury. Petitioner asserts that proceeding in his absence violated his right to due process of law pursuant to the Fifth, Sixth, and Fourteenth Amendments (Ground 1), and that this event constituted a "Faretta" violation, i.e., a violation of his Sixth Amendment right to self-representation (Ground 2). The undersigned will address the claims in the reverse order.

**1. Petitioner contends he was denied his federal constitutional right to self-representation.**

A defendant has a federal constitutional right to represent himself at his criminal proceedings. <u>See</u> <u>Faretta v.</u>

-18-

<u>California</u>, 422 U.S. 806, 95 S. Ct. 2525 (1975). A defendant's federal constitutional rights are not violated, however, by the appointment of standby, or advisory, counsel. The distinction between the "permissible" and "impermissible" participation of a pro se defendant's standby or advisory counsel was established by <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 173-74, 104 S. Ct. 944, 948-50 (1984). In <u>McKaskle</u> the Supreme Court held that a criminal defendant's federal constitutional right to self-representation is not equivalent to an "absolute bar on standby counsel's unsolicited participation" in the defendant's criminal proceedings. <u>Id.</u>, 465 U.S. at 176, 104 S. Ct. at 950.

When determining whether a defendant's right to self-representation during his criminal proceedings was violated, "the primary focus must be on whether the defendant had a fair chance to present his case in his own way." <u>Id.</u>, 465 U.S. at 177, 104 S. Ct. at 950. The defendant's rights are not violated if he makes his "voice heard" by preserving "actual control over the case he chooses to present to the jury." <u>Id.</u>, 465 U.S. at 178, 104 S. Ct. at 951. Accordingly, participation by the defendant's standby counsel should not be "allowed to destroy the jury's perception that the defendant is representing himself." <u>Id.</u>

In <u>McKaskle</u> the United States Supreme Court noted that "the appearance of a pro se defendant's self-representation will not be unacceptably undermined by counsel's participation *outside the presence of the jury.*" <u>Id.</u>, 465 U.S. at 179, 104 S. Ct. at 951 (emphasis added). Accordingly, a defendant's

-19-

constitutional rights are not violated by their exclusion from an in-chambers proceeding unless the proceeding involved a significant tactical decision or a "matter of importance." _Id._, 465 at 178, 104 S. Ct. at 951.

The Supreme Court further held:

> Thus, Faretta rights are adequately vindicated in proceedings outside the presence of the jury if the pro se defendant is allowed to address the court freely on his own behalf and if disagreements between counsel and the pro se defendant are resolved in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel.

_Id._

In denying Petitioner's claim that his right to self-representation was denied, the Arizona Court of Appeals correctly found _Faretta_ and _McKaskle_ to be the controlling federal law and noted that the denial of the right to self-representation is structural error. _See_ Answer, Exh. C. Accordingly, the Arizona state court's decision was not clearly contrary to established federal law.

The appellate court concluded the right was adequately protected because Petitioner was given the opportunity to be heard regarding the jury notes and the receiving of the verdict and advisory counsel's position did not ultimately prevail over Petitioner's position. The appellate court also concluded Petitioner was not deprived of the opportunity to direct his own defense. _See id._, Exh. C at 6-7. The Arizona Court of Appeals found that Petitioner was given ample opportunity to present his position with regard to the jury questions to the trial court

and to make the decision to go forward with entering the jury's verdict.

The Arizona state court's decision was not an unreasonable application of clearly established Supreme Court precedent at the time the decision was issued. At the time the state court reached its decision, no United States Supreme Court opinion had extended <u>Faretta</u> and <u>McKaskle</u> to a self-representing defendant's right to be present during an in-chambers consideration of a jury note. The state court's application of <u>McKaskle</u> to Petitioner's case was not unreasonable because the state court properly weighed the elements of the <u>McKaskle</u> test. The state court evaluated whether Petitioner had been allowed to present his own case to the jury and noted standby counsel's presence during the exchange of notes between the jury.

The Supreme Court's emphasis in <u>McKasle</u> was the defendant's right to have the *jury* perceive that he was controlling his own defense. Pursuant to <u>McKaskle</u>, the likelihood that a criminal defendant's constitutional right to self-representation would be violated by their absence from an in-chambers proceeding was necessarily less than their absence from a jury proceeding. <u>See</u> 465 U.S. at 178, 104 S. Ct. at 951. Notably, <u>McKaskle</u> left open the question as to what type of in-chambers proceeding might require the presence of a pro se defendant rather than just his advisory counsel. Because the error asserted in this matter involved standby counsel's participation outside the presence of the jury, the state court's decision was not clearly contrary to nor an unreasonable

application of the standard stated in <u>Faretta</u> and <u>McKaskle</u>.[5]

The state court's decision was not objectively unreasonable because it "failed" to extend <u>McKaskle</u>. The state court did not fail to extend <u>McKaskle</u> in a way that was objectively unreasonable because, at the time the Arizona Court of Appeals decided the issue presented in Petitioner's habeas action in 2006, the United States Supreme Court had not issued an opinion stating that a defendant's right to self-representation was violated by the appearance of only his advisory counsel at an in-chambers conference regarding a communication from a deliberating jury. Additionally, at the time the Arizona Court of Appeals decided Petitioner's <u>Faretta</u> claim, the Ninth Circuit Court of Appeals had not resolved a District Court judge's decision denying habeas relief on a similar <u>Faretta</u> claim in <u>Frantz v. Hazey</u>.[6] The petition for a

---

[5]In <u>Kane</u> the Supreme Court concluded that the state court's decision was not clearly contrary to federal law because "it [was] clear that Faretta says nothing about any specific legal aid that the State owes a pro se criminal defendant". Similarly, in this matter, the Supreme Court has not indicated that a pro se criminal defendant's rights are violated if they are not present at an in-chambers conference regarding a jury note which does not involve a substantive question regarding the evidence.

[6] The Arizona Court of Appeals' decision in Petitioner's case was issued in October of 2006. Initial oral argument was heard and the appeal in <u>Frantz</u> was submitted to a three-judge panel of the Ninth Circuit Court of Appeals on the briefs also in October of 2006. The panel opinion or entry of decision in <u>Frantz</u> does not appear in the Ninth Circuit docket of the matter, or in the Arizona District Court CM/ECF docket (4:04 CV 135), or on Westlaw. On December 29, 2006, the Ninth Circuit Court of Appeals ordered a rehearing en banc. <u>See</u> Ninth Circuit Court of Appeals Docket No. 05-16024; 472 F.3d 679. The matter was submitted to the en banc panel in March of 2007, and the resulting opinion was issued in 2008. <u>See Frantz v. Hazey</u>, 533 F.3d 724, 740 (9th Cir.) ("even if [standby counsel] accurately

-22-

rehearing en banc in <u>Frantz</u> was ordered on December 29, 2006, oral argument was heard in March of 2007; both indications of how the Ninth Circuit might rule on the question were not available to the Arizona state court at the time Petitioner's direct appeal was decided.[7]  At the time the state appellate court reached its decision, United States Supreme Court and Ninth Circuit Court of Appeals precedent supported the state court's denial of relief.

Even if the state court's decision in Petitioner's case was erroneous, the state court's decision was not objectively unreasonable.  The decision was reasonable because there was no published legal opinion to the contrary and the state court properly worked through the elements of the correct legal test. <u>See</u> <u>Price v. Vincent</u>, 538 U.S. 634, 642, 123 S. Ct. 1848, 1854-55 (2003); <u>Penry v. Johnson</u>, 532 U.S. 782, 793, 121 S. Ct. 1910, 1918 (2001).

Additionally, to the extent <u>Frantz</u> held the conclusion in that case was self-evident from <u>McKaskle</u>, the fact pattern in <u>Frantz</u> is distinguishable from the situation presented in Petitioner's criminal proceedings.  In <u>Frantz</u> the federal appellate court interpreted, or expanded, <u>McKaskle</u> to include a

portrayed [defendant's] wishes, unconsented-to exclusion from the conference would so substantially reduce [defendant's] ability to shape and communicate his own defense as to violate his Faretta rights").

[7]Additionally, the holding in <u>Frantz</u> is that the state court erred by applying harmless error to the Faretta claim when such an error is structural.  In this matter the issue is whether the state court's decision was an unreasonable application of federal law and not whether the state decision was clearly contrary to federal law.

-23-

self-defending defendant's right to represent himself during an in-chambers conference regarding a jury note seeking to review non-admitted evidence, unless there was evidence that the defendant had agreed to allow standby counsel to represent him at the conference. In Petitioner's case the jury note was not regarding evidence and the state court found Petitioner acquiesced, albeit after the fact, to standby counsel's representation. Petitioner also had the opportunity to object to the trial court's decision regarding the jury note and to object to the trial court taking a verdict based on its response to the jury note. The District Court is bound by the state court's conclusion that Petitioner acquiesced to standby counsel's participation in the in-chambers conferences, absent clear and convincing evidence to the contrary, removing it from the rubric of <u>Frantz</u>, in which the Ninth Circuit remanded the matter for an evidentiary hearing on this question.

The primary holding of <u>Frantz</u>, for which it is regularly cited, is that the state court erred by applying harmless error review to the petitioner's Faretta claim when such error is structural. The Ninth Circuit, applying de novo review, stated in dicta that a defendant's right of self-representation included the right to be present at chambers conference regarding jury questions about evidence during deliberations.

However, the Ninth Circuit also concluded that a defendant's consent to standby counsel's solo participation in a chambers conference would preclude a Sixth Amendment

violation. <u>Frantz</u>, 533 F.3d at 743-44. The undersigned notes that, in this matter, the state courts concluded as a matter of fact that Petitioner consented to standby counsel's solo participation in the chambers conference regarding at least the first jury question. Petitioner also consented, albeit after the fact, to standby counsel's participation in the chambers conference regarding the second jury note. Petitioner has not presented "clear and convincing" evidence that he did not consent to his counsel's participation in chambers conferences regarding jury notes.

Accordingly, Petitioner is not entitled to federal habeas relief based on the assertion that the state court unreasonably applied clearly established federal law by rejecting the Petitioner's Faretta claim. <u>See</u> <u>DeWeaver v. Runnels</u>, 556 F.3d 995, 1002 (9th Cir. 2009); <u>Cook</u>, 538 F.3d at 1016; <u>Crater</u>, 491 F.3d at 1123; <u>United States v. Jones</u>, 489 F.3d 243, 248-49 (6th Cir. 2007).[8] <u>Compare</u> <u>Torres v. Uttecht</u>, 545 F. Supp. 2d 1141, 1146 (W.D. Wash. 2008) (holding that the state trial court's failure to consult a non-English speaking, self-

_____

[8]

> In such proceedings, therefore, the defendant's right to self-representation is satisfied "if the pro se defendant is allowed to address the court freely on his own behalf and if disagreements between counsel and the pro se defendant are resolved in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel." <u>Id.</u> (footnote omitted). Because Jones's sentencing and all relevant pre-sentencing proceedings took place outside the presence of a jury, Jones's right to self-representation is limited accordingly.

<u>United States v. Jones</u>, 489 F.3d 243, 248-49 (6th Cir. 2007).

-25-

representing defendant and the failure to translate a jury note was a violation of the defendant's Faretta rights).

**2. Petitioner's right to be present during his criminal proceedings.**

A criminal defendant's federal constitutional right to be present at their criminal proceedings derives from both the Sixth Amendment's right to confront witnesses against the defendant and the defendant's right to due process of law pursuant to the Fifth and Fourteenth Amendments. See, e.g., Conner v. McBride, 375 F.3d 643, 654-55 (7th Cir. 2004). The defendant's right to due process is implicated by the occurrence of critical criminal proceedings, such as a trial, without the defendant present as both an observer and a participant. See Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S. Ct. 330, 332 (1934). The right to be present is not absolute, but is implicated when the defendant's "presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." Id., 291 U.S. at 105-06, 54 S. Ct. at 332. A "critical stage" is one at which "substantial rights of the accused may be affected." Mempa v. Rhay, 389 U.S. 128, 134, 88 S. Ct. 254, 256-57 (1967).

In his direct appeal Petitioner argued to the Arizona Court of Appeals that he was denied the right to be present for all important stages of his trial because he was not present for the in-chambers conferences regarding the jury notes. Answer, Exh. B. The Arizona Court of Appeals denied the claim on three separate bases. The state appellate court concluded Petitioner

-26-

waived this claim by failing to timely object to any alleged error. The Court of Appeals also concluded the alleged error was harmless because Petitioner's constitutional right to be present did not extend to an in-chambers discussion outside of the presence of the jury. The Court of Appeals also held that the asserted error did not warrant relief because the communication between the trial court and the jury consisted of a repetition of the jury instructions. Id., Exh. C.

The Arizona Court of Appeals' decision was not clearly contrary to federal law nor an unreasonable application of clearly established federal law. At the time of the Arizona Court of Appeals' decision in 2006 there was no United States Supreme Court opinion in furtherance of Snyder holding that an in-chambers discussion regarding a jury note resulting in re-directing the jury to its instructions was a "critical stage" of criminal proceedings.

Therefore, the state court's decision denying relief on this claim was not clearly contrary to established federal law nor an unreasonable application of federal law and Petitioner is not entitled to habeas relief based on this claim.

**3. Petitioner maintains that the sentences imposed were illegal because there was no threat of violence and because the state violated his right to due process by presenting aggravating circumstances to a jury.**

Petitioner did not properly exhaust this claim by fairly presenting it to the Arizona Court of Appeals either in Petitioner's direct appeal or in a properly filed state action

for post-conviction relief. Accordingly, Petitioner has procedurally defaulted this claim.

In reply to the Answer to his petition, Petitioner contends "This case is a fundamental miscarriage of justice. The jail took all of my legal documents and would not allow me to even have pencil and paper. When the trial court was informed of it they did nothing." Docket No. 18 at 2. Petitioner further asserts he was denied the services of a court-ordered paralegal during his criminal proceedings and, as a result, he was unable to "challenge the grand jury." Id. Petitioner further asserts the unreasonableness of his sentence of 10 years imprisonment for robbery which, he contends, should have been charged as shoplifting. Petitioner alleges he was charged "with armed robbery because of the color of my skin." Id. Petitioner asserts his rights were violated because his advisory counsel did not inform the trial judge that Petitioner wanted a mistrial after the jury asked questions after the beginning of deliberations. Id. at 2-3. Petitioner contends his right to be present and for his attorney, i.e., himself, to be present at all phases of his criminal proceedings was violated by the trial court's actions in addressing questions raised by the jury.

Petitioner has not asserted cause for, nor prejudice arising from his procedural default of his federal habeas claim that his sentence was excessive. Petitioner has not properly alleged that, absent review of the merits of this claim, a fundamental miscarriage of justice will occur. Petitioner does

not contend that he is factually innocent, but instead asserts he was mis-charged and, accordingly, mis-sentenced.

**4. Petitioner alleges that jail authorities abridged his right to access the courts during his criminal proceedings.**

Petitioner did not properly exhaust this claim by fairly presenting it to the Arizona Court of Appeals either in Petitioner's direct appeal or in a properly filed state action for post-conviction relief. Accordingly, Petitioner has procedurally defaulted this claim.

Petitioner has not shown cause for his failure to present this claim in his direct appeal or in a state action for post-conviction relief. Additionally, Petitioner has not established prejudice arising from the failure to previously present this claim. Petitioner has not shown that a fundamental miscarriage of justice will occur absent a review of the merits of his claim that his right to access the courts was violated. Therefore, relief may not be granted on the merits of the claim.

**III Conclusion**

Petitioner never asserted any specific claims for state post-conviction relief in a properly filed action pursuant to Rule 32, Arizona Rules of Criminal Procedure. Accordingly, the only federal habeas claim properly exhausted in the state courts was any claim presented to the Arizona Court of Appeals in Petitioner's direct appeal. The only claim properly exhausted by Petitioner in the state courts was his claim regarding his self-representation and his Sixth Amendment claim. The state court did not err in denying relief on these claims. Petitioner

procedurally defaulted his other federal habeas claims in the state courts and he has not shown cause for, nor prejudice arising from his procedural default of the claims. Neither has Petitioner established that a fundamental miscarriage of justice will occur if the Court does not consider the merits of the claims.

**IT IS THEREFORE RECOMMENDED** that Mr. Hearn's Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered

a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

DATED this 8th day of October, 2009.


_____
Mark E. Aspey
United States Magistrate Judge