1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9  Nathaniel Hearn,                    )   No.  CV 08-448-PHX-MHM
                                        )
10              Petitioner,             )   **ORDER**
                                        )
11  vs.                                 )
                                        )
12                                      )
    Dora B.  Schriro, et al.,           )
13                                      )
                Respondents.            )
14                                      )
                                        )
15  _____ )

16

17          Currently  before  the  Court  is  Magistrate  Judge  Mark  Apsey's  Report  and

18  Recommendation.  (Doc.  19).  Having carefully considered Petitioner Nathaniel Hearn's

19  objections to the R&R, (Docs.  24 & 26), the Court issues the following Order:

20  **I.      BACKGROUND**

21          **A.      Procedural History.**

22          Petitioner filed his *pro se* Petition for Writ of Habeas Corpus on March 3, 2008.

23  (Doc. 1).  Respondents filed their answer on October 10, 2008, (Doc. 15), and the motion

24  became fully briefed on February 10, 2009, when Petitioner filed his reply.  (Doc. 19).  On

25  October 13, 2009, Magistrate Judge Mark Aspey issued his Report and Recommendation

26  ("R&R") denying in full Petitioner Petition for Writ of Habeas Corpus and recommending

27  it be dismissed with prejudice.  (Doc. 19).

28          After being given numerous extensions of time, on January 27, 2010, Petitioner filed

his objections to the "R&R." (Doc. 24).  Respondents responded on February 18, 2010 (Doc. 25).  Two months later, on April 1, 2010, Petitioner moved that he be allowed to supplement his objections to the R&R in light of the Ninth Circuit's decision in <u>Frantz v. Hazey</u>, 533.F3d. 724 (9th Cir. 2008) (en banc).  Because of the factual similarity between <u>Frantz</u> and the instant case, and out of an abundance of caution, on July 20, 2010, the Court granted Petitioner's motion. (Doc. 27).  Respondents filed their supplemental response on August 3, 2010. (Doc. 28).  On February 25, 2011, to facilitate its review, the Court ordered that Respondents file with the Court with the full trial record in this case; Respondents had attached only select portions of the record to their response.  (Doc. 29).  Respondents filed the full record with this Court on March 4, 2011.  (Docs. 30–33).

### B.   Factual History

On January 23, 2004, the state of Arizona filed an indictment charging Petitioner with one count of misdemeanor shoplifting, one felony count of armed robbery, and one felony count of unlawful flight from a law enforcement vehicle.  (Doc. 15, Respondents' Answer to Petition for Writ of Habeas Corpus ("Answer"), Exh. A.).  The indictment was amended to add prior felony convictions and that Petitioner committed the alleged crimes while on supervised release.  (<u>Id</u>.).  On or about April 12, 2004, Petitioner elected to proceed *pro se*, and the trial court appointed Stephen Rempe as advisory counsel. (<u>Id</u>., Status Conference (07/01/2204 )).  Prior to trial, Rempe withdrew for medical reasons, (<u>Id</u>., Trial Management Conference (8/17/2004)), and the trial court  appointed Larry Bleiden as advisory counsel. (<u>Id</u>.).

The trial began on September 27, 2004, and lasted four days.  The case went to the jury on the third day of trial at 3:15 PM, but it was unable to reach a verdict. (<u>Id</u>.).  The jury resumed deliberating the next day, September 30, 2004, and at 10:55 AM it sent the trial court a question.  (<u>Id</u>., Maricopa Country Superior Court Jury Deliberation Question #1).  The jury informed the Judge: "Can not agree on armed robbery.  Need Assistance!"  (<u>Id</u>.).  At 11:15 AM the trial judge convened a conference concerning the jury note.   (<u>Id</u>., Trial

Minute Entry Day 4).  Advisory counsel Goldstein[1] and the prosecutor were present; Petitioner was not.  (Id.).  At 11:30 PM the trial judge gave the jury a written response to its question: "I need a lot more guidance from you on the base of the impasse. The instructions are clear as to how you should deliberate on both counts and in the event there is an impasse. Moreover, your note says nothing about the offense of unlawful flight or the lesser included offense of robbery." (Id., Maricopa Country Superior Court Jury Deliberation Question #2). The first jury-note conference occurred off the record.  (Id., Exh. B, Appellant's (Petitioner's) Opening Brief before the Arizona Court of Appeals, p.17 (citing the Certified Statement of Court Reporter Terry Masciola)).

Approximately twenty five minutes later, at 11:55 AM, the jury sent a second question: "Agreement on flight & robbery (lesser offense). Disagreement on credibility of witnesses regarding the existence of weapon. What further assistance can you provide?" (Id., Exh. A, Maricopa Country Superior Court Jury Deliberation Question #2).  The trial judge held two off the record conferences concerning the second jury note, one at 12:00 PM and another at 1:30PM.[2] (Id., Trial Minute Entry Day 4).  The trial judge answered the second question as follows:

> Based on your response, you've reached a verdict on the unlawful flight charge as well as the lesser included offense of robbery.  Because you disagree on armed robbery given your perception of the witness' credibility, you can find the lesser included offense of robbery without having to reach a verdict on armed robbery. A verdict form will be modified to be consistent with the jury instruction on the lesser included offense of robbery.

---

[1]Goldstein, who represented Petitioner during the first jury-note conference, was not the advisory counsel of record.  It is not clear why he, and not advisory counsel Bleiden, was present at the first jury-note conference.

[2]The record does not indicate the name of the advisory counsel present during the discussions of the second question.  Additionally, the record is somewhat unclear with respect to the topic of the 1:30 discussion.  The minute entry shows that the purpose of the 12:00PM meeting was to discuss the second jury question.  As for the 1:30PM discussion, the minute entry shows only that a "jury question" was discussed.  The record, however, only contains two jury questions, suggesting the 12:00 PM and 1:30 PM discussion concerned the same jury question.

1  (Id., Exh. A, Maricopa Country Superior Court Jury Deliberation Question #2).   Petitioner

2  was not present at either of the jury-note conferences concerning the second question.  (Id.).

3  (Id., Exh. B, Appellant's (Petitioner's) Opening Brief before the Arizona Court of Appeals,

4  p.17 (citing the Certified Statement of Court Reporter Terry Masciola)).

5      The trial court went back on the record at 1:50 p.m. (Id., Trial Minute Entry Day 4).

6  Petitioner, advisory counsel, and the prosecutor were all present.  (Id., Exh. A, Trial Minute

7  Entry Day 4).  At that time, the trial judge informed Petitioner that the jury had submitted

8  two questions and expressed his belief that Petitioner had "been kept abreast," of these

9  developments. (Id., Exh. L, p. 4). The trial judge further explained there was "nothing" said

10  in response to the jury's questions "other than what was in the instructions," and told

11  Petitioner that the jury had likely reached a verdict on the lesser included offense of robbery,

12  but could not reach a verdict on the offense of armed robbery.  (Id. at 4–5).   He also

13  informed Petitioner that the jury had been provided a form of verdict allowing for a hung jury

14  on the charge of armed robbery. (Id., at 5 (informing Petitioner that verdict form now

15  allowed the jury to answer "unable to reach a determination")).   Finally, Petitioner was

16  informed that he did not have to agree to the new form of verdict, but had the right to see it

17  and object if he liked, asking "What is your objection?"  (Id., at 5).[3]

18      In response to this question, Petitioner stated: "The Jury has already been instructed

19  and already been given the instructions, and they had everything in there, all the evidence

20  and everything."  (Id.).   Petitioner also explained that he was aware of only one jury

21  question—the question in which the jury stated it needed more information (the first jury

22  question). (Id.). The trial judge reiterated that the jury "asked for guidance, and we haven't

23  given them any guidance other than to direct them back to the jury instructions with a little

24  language thrown in," and asked Petitioner if he objected.     (Id. at 6).   Before allowing

25  Petitioner to answer the question, the trial judge asked for the prosecution's position.  (Id.).

26

27

28      [3]During the trial judge's opening colloquy with Petitioner, the Bailiff interrupted the
proceeding to notify the trial court that the jury had reached a verdict. (Id., Exh. L at 4).

The prosecutor opined, that in answering the jury's questions, the judge had merely reiterated the jury instructions and instructed the jury to follow them, and that the judge's actions were in Petitioner's best interest, as forcing the jury to reach a verdict on the armed robbery charge would probably result in a finding of guilty and an enhanced sentence for Petitioner. (Id. at 6–7). The trial judge then informed Petitioner that he would consider directing the jury to continue deliberating if Petitioner so requested, but instructed Petitioner that the fact the jury could not reach a verdict on armed robbery was a "good thing" for him. (Id. at 7).

At that point, advisory counsel Blieden informed the court that Petitioner had not seen the court's response to the jury's second question, and suggested Petitioner be allowed to view that response before deciding whether to object. (Id.). The trial judge, however, did not have a copy of the response with him on the bench to show Petitioner. (Id.). Petitioner then asked, "So you still going to give more instructions to them even though they already issued a verdict?" (Id. at 8). The trial judge replied, "Well, I could," then Petitioner and advisory counsel conferred off the record. (Id.). After this conference, the trial judge asked, "Do you understand, Mr. Hearn, where we are?" (Id.). Petitioner responded, "Yeah. Basically, I understand exactly where we are. So are you still going to give them more instructions --" (Id.). The trial judge stated that he would consider further instructing the jury if Petitioner requested that he do so, but reiterated his opinion that doing so was not in Petitioner's best interest. (Id. at 8–9). Petitioner responded: "[B]ut if they can't reach a verdict, its not considered that its over with." (Id. at 9). At the trial judge's behest, the prosecutor then explained to Petitioner that if the jury could not reach a decision on both the armed robbery and robbery charges, Petitioner could be retried, but that if the jury convicted Petitioner on the lesser included offense of robbery no retrial could occur. (Id. at 9–10). The trial judge asked Petitioner if he had understood the prosecutor's explanation, and Petitioner stated that he did. (Id. at 10). Petitioner then acquiesced to the trial court's taking of the verdict; he did not request that the jury be further instructed and asked to deliberate further. (Id.).

On September 30, 2004, the jury returned a verdict of guilty on the lesser-included

offense of robbery and unlawful flight; it was unable to reach a verdict on armed robbery. (Id.,Exh. A, Trial Minute Entry Day 4).  After the taking the jury's verdict, the Court held aggravation proceedings, the purpose of which was to have the jury determine if any aggravators existed that would subject Petitioner to a lengthier sentence. The jury found two sentence aggravators, concluding Petitioner committed the offenses while on release and that Petitioner had prior convictions. (Id.).

Before sentencing, Petitioner filed a motion for a new trial.  (Id., Motion for New Trial).  In that motion, Petitioner argued that the trial court violated his constitutional rights to be present during a critical stage of the proceeding and self-representation by excluding him from the jury-note conferences.  (Id.).  In denying the motion, the trial court concluded:

> [T]he defendant's presence in answering the jury's question during deliberations was not necessary for 2 reasons. First, both the prosecution and defendant's liaison counsel were present. In light of the response the Court indicated it was going to make to the jury's question, neither counsel nor the Court felt that the defendant's presence was required. Second, the court did not answer the question, but, rather, simply directed the jury to rely on the evidence presented in reaching the ultimate determination of the issue.

(Id., Minute Entry (11/29/04 )). On March 22, 2005, the trial court sentenced Petitioner to a twelve-year term of imprisonment pursuant to his conviction for robbery and a concurrent six-year term of imprisonment pursuant to his conviction on the charge of unlawful flight from a law enforcement vehicle. (Id., Sentence of Imprisonment). Both sentences were ordered to run consecutively to sentences of incarceration imposed in 2002 and 2003 in separate criminal proceedings. (Id.,).

Petitioner took a direct appeal of his convictions and sentences and was represented by the Maricopa County Public Defender.  (Id., Exh. B, Appellant's Opening Brief).  Therein Petitioner once again asserted the trial court violated his constitutional rights to be present during a critical stage of the proceeding and self-representation by excluding him from the jury-note conferences.  (Id.).  Petitioner also alleged the trial court erred by failing to credit Petitioner for an additional 133 days of pre-sentence incarceration.  (Id.).

On October 24, 2006, the Arizona Court of Appeals affirmed Petitioner's convictions, although it modified his pre-sentence incarceration credit. (Id., Exh. C).  Citing Faretta v. California, 422 U.S. 806 (1975), and McKaskle v. Wiggins, 465 U.S. 168 (1984), the Court

of Appeals denied Petitioner's self-representation claim, finding that Petitioner's "<u>Faretta</u> rights were adequately protected," because Petitioner was given "an opportunity to see and object to the form or make other objections," and because:

> Hearn later informed the court he understood the appropriateness of the jury instruction, the process the jury had gone through to make a decision, and that he was prepared for the jury to be called. Hearn was given ample opportunity to present his own position to the court. He was given the opportunity to freely address the court on his own behalf. In no circumstances did advisory counsel's position prevail over that of Hearn's nor was Hearn deprived of the opportunity to direct his own defense.

(<u>Id.</u>). The Court of Appeals also concluded that Petitioner's due process right to be present at critical stages of his criminal proceedings was not violated. The Court of Appeals noted that, absent fundamental error, a defendant could waive the right to be present by failing to object. The appellate court concluded that "Hearn did not object to his absence when given an opportunity to do so." (<u>Id.</u>). The Court of Appeals concluded Petitioner had waived any objection to his absence from the chambers conferences and that, additionally, "he ratified the decisions made in consultation with his advisory counsel." (<u>Id.</u>). Furthermore, the Court of Appeals held that any error was not reversible because Petitioner was not prejudiced by the trial court's communication with the jury. (<u>Id.</u>).

On April 12, 2007, the Arizona Supreme Court summarily denied review of the Court of Appeals' decision. (<u>Id.</u>, Exh. D). Petitioner then initiated an action for state post-conviction relief pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. (<u>See id.</u>, Exh. E). This suit was initially dismissed for failure to prosecute, then was re-opened, but dismissed as time-barred. (<u>See id.</u>, Exh. G; Exh. H; Exh. I). Petitioner filed the instant Petition for Writ of Habeas Corpus on March 3, 2008. (Doc. 1).

## II.    STANDARD OF REVIEW

A district court must review the legal analysis in a Magistrate Judge's Report and Recommendation *de novo*. <u>See</u> 28 U.S.C. § 636(b)(1)(C). In addition, a district court must review the factual analysis in the Report and Recommendation *de novo* for those facts to which objections are filed. <u>See</u> <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); <u>see also</u> 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de*

1   *novo* determination of those portions of the report or specified proposed findings or

2   recommendations to which objection is made").  "Failure to object to a magistrate judge's

3   recommendation waives all objections to the judge's findings of fact."  Jones v. Wood, 207

4   F.3d 557, 562 n. 2 (9th Cir. 2000).

5   **III.   DISCUSSION**

6       In his habeas petition, Petitioner re-asserts that by excluding him from the jury-note

7   conferences, the trial court violated his constitutional rights to be present during a critical

8   stage of the proceeding ("critical stage") and self-representation.  (Doc. 1).  Petitioner also

9   asserts that his sentences are illegal because his crime did not involve a threat of violence and

10   because the presentation of aggravating circumstances to a jury violated due process. (Id.).

11   Additionally, Petitioner maintains he is entitled to habeas relief because jail authorities

12   abridged his right to access to the courts during the criminal proceedings in this case.  (Id.).

13       The R&R recommends that all of Petitioner's claims be denied.  (Doc. 19).  With the

14   exception of Petitioner's critical stage and right to self-representation claims, Magistrate

15   Judge Aspey found that Petitioner's claims were not properly exhausted.   (Id. at 18).

16   Petitioner did not object to the exhaustion finding, and this Court agrees with the R&R's

17   analysis of the issue.  Because he did not successfully pursue post-conviction relief pursuant

18   to Rule 32, the only exhausted claims Petitioner possess are those that he presented in his

19   direct appeal—his critical stage and self-representation claims.  See O'Sullivan v. Boerckel,

20   526 U.S. 838, 842 (1999) (explaining that a district court may not grant federal habeas relief

21   on the merits of a claim which was not exhausted in the state courts).  Accordingly, this

22   Court adopts the Magistrate Judge's findings with respect to Petitioner's unexhausted claims.

23       The R&R rejected Petitioner's exhausted claims on the merits.  Petitioner does not

24   appear to object to the R&R's conclusions concerning his critical-stage claim, focusing his

25   energies instead on the self-representation claim.  Nonetheless, the Court has reviewed the

26   section of the R&R addressing Petitioner's critical-stage claim and agrees with its

27   conclusion; that the Arizona Court of Appeals decision rejecting Petitioner's critical-stage

28   claim was not contrary to or an unreasonable application of federal law. The R&R is correct

that <u>Snyder v. Massachusetts</u>, 291 U.S. 97 (1934), which holds that a criminal defendant has a due process right to be present at any critical stage of criminal proceedings, has not been specifically applied by the Supreme Court to in-chambers conferences and other brief bench conferences. Additionally, as the Arizona Court of Appeals noted, "while a defendant has a right to be present at all phases of the trial, failure to object to exclusion from a conference, when the defendant is present and able to do so, waives the error," unless it was fundamental. <u>State v. Dann</u>, 205 Ariz. 557, 572 (2003). An error is fundamental "if it is 'clear, egregious, and curable only via a new trial' and, viewed in the context of the entire trial, is 'of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial.'" <u>Id.</u> (quoting <u>State v. Gendron</u>, 168 Ariz. 153, 155 (1991)). Petitioner was given an opportunity to object to his exclusion from the jury-note conferences, but did not do so. Additionally, it was not unreasonable for the Court of Appeals to conclude that his exclusion, even if in error, was not fundamental, but instead was harmless, as Petitioner was not convicted of armed robbery. The Court therefore adopts the R&R's conclusion as to Petitioner's critical-stage claim.

Petitioner makes numerous objections with respect to his self-representation claim, some based on findings of fact, others based on conclusions of law. Petitioner objects to Magistrate Judge Aspey's factual findings that: (1) neither the prosecutor nor advisory counsel requested a court reporter be present for the jury-note conferences; (2) Petitioner had been kept fully abreast of the proceedings with respect to the jury questions; (3) Petitioner had understood the appropriateness of the jury instruction in light of the jury's questions; and (4) Petitioner consented to stand-by counsel's solo participation in jury-note conferences. As for conclusions of law, Petitioner argues that: (1) the R&R erred by not finding that the Arizona Court of Appeals improperly addressed Petitioner's self-representation claim under structural error review; (2) the Magistrate Judge failed to review the whole record; (3) the Magistrate Judge improperly concluded that the Court of Appeals decision was not contrary to or an unreasonable application of established federal law; and (4) the Magistrate Judge applied improper deference to the state court's factual findings. The Court will consider

1    Petitioner's factual objections before turning to those based on law.

2            **A.      Factual Objections**

3                    **1.      Legal Standard**

4            Factual findings of a state court are presumed to be correct and can be reversed by a

5    federal habeas court only when the federal court is presented with clear and convincing

6    evidence of error. <u>See</u> <u>Miller-El v. Dretke</u>, 545 U.S. 231, 239-40 (2005); <u>Miller-El v.</u>

7    <u>Cockrell</u>, 537 U.S. 322, 340 (2003) (holding the court must presume that the state court's

8    factual findings are correct and may not reverse a state court's factual finding "absent clear

9    and convincing evidence" that the finding is "objectively unreasonable."); <u>Stenson v.</u>

10   <u>Lambert</u>, 504 F.3d 873, 881 (9th Cir. 2007), <u>cert. denied</u>, 129 S. Ct. 247 (2008); <u>Anderson</u>

11   <u>v. Terhune</u>, 467 F.3d 1208, 1212 (9th Cir. 2006); <u>Solis v. Garcia</u>, 219 F.3d 922, 926 (9th Cir.

12   2000) ("The state court's factual findings are entitled to a presumption of correctness unless

13   the petitioner rebuts the presumption with clear and convincing evidence."). The

14   "presumption of correctness is equally applicable when a state appellate court, as opposed

15   to a state trial court, makes the finding of fact." <u>Sumner v. Mata</u>, 455 U.S. 591, 593 (1982).

16                   **2.      Discussion**

17                           **a.      Factual Objection 1**

18           Citing to the statement in Petitioner's own appellate brief that "there does not appear

19   to have been any court reporter present for the jury note conferences," the R&R finds "[t]he

20   parties, i.e., the prosecutor and Petitioner's advisory counsel, did not request that a court

21   reporter be present for the in-chamber proceedings regarding the jury's communications."

22   (Doc. 19, p.3).  Petitioner argues that this is an incorrect statement of fact, as advisory

23   counsel told Petitioner that he had requested a court reporter, but the trial judge had denied

24   the request.  (Doc. 24, p.1).  Petitioner's allegation is unsupported by evidence other than

25   Petitioner's own affidavit, in which he states that Goldstein objected to the absence of a court

26   reporter at the first jury-note conference.  (Doc. 26, Petitioner Nathaniel Hearn's Affidavit,

27   ¶53-54).  Based on Petitioner's affidavit alone, the Court cannot definitively conclude that

28   the Magistrate Judge erred.  That being said, the Court notes that the record does not contain

any evidence conclusively proving that the Parties failed to request a court reporter. Accordingly, on the record before it, the Court cannot decisively resolve the objected to issue of fact.  It can say, however, that whether or not the Parties requested a court reporter is not relevant to any of Petitioner's claims, as Petitioner has not brought a claim predicated on the denial or absence of a court reporter.  Petitioner's objection therefore is overruled.

### b.     Objection 2

Petitioner also objects to the Magistrate Judge's statement: "At that time the trial court addressed Petitioner and noted that Petitioner had been 'kept abreast' of the proceedings by his advisory counsel." (Doc. 19, p. 3–4 (citing Doc 15., Exh. L)).  Petitioner denies that he was kept abreast of what occurred during the jury note conferences, arguing instead that he had only been made aware about one of the two jury notes.  Petitioner's position notwithstanding, the R&R's recitation of the facts is not incorrect; the trial judge did in fact note that Petitioner had "been kept abreast by [his] attorney of where we are."   (Doc 15., Exh. L, p. 5).  Second, the Arizona Court of Appeals decision expressly stated that "Hearn indicated he was aware of one jury question but did not realize the jury had asked a second." (Id., Exh. C).  Accordingly, the number of jury notes of which Petitioner was or was not aware does not appear to be in dispute.

### c.     Objection 3

Next, Petitioner objects to the Arizona Court of Appeals finding that "[Petitioner] later informed the court he understood the appropriateness of the jury instruction, [and] the process the jury had gone through to make a decision," on the grounds that it is false and not in the record.  (Id.).  A review of the record, however, undercuts Petitioner's claim.  The trial judge, aided by the prosecutor, explained to Petitioner the reasons he instructed the jury that it could "find the lesser include offense of robbery without having to reach a verdict on armed robbery.".  (Answer, Exh. L)  Specifically, the trial judge told Petitioner, that based on the notes he had received from the jury, the judge believed that the jury probably could not reach a verdict on armed robbery, but instead had probably reached a verdict on the lesser-included offense of robbery, and explained the bases for this belief.  (Id.  at 5–6, 9).

1   The trial judge and the prosecutor also explained to Petitioner the potential benefits of the

2   modified verdict form, such as the danger that forcing the jury to continue deliberating would

3   result in a guilty verdict.  (Id.  at 7, 8–9).  They also cleared up Petitioner's confusion

4   concerning the impact of a hung jury on the armed robbery count, explaining that Petitioner

5   could not be retried if the jury convicted on the lesser included offense.  (Id. at 8–9).

6        In short, this Court does not agree with Petitioner that the  record lacks evidence to

7   support the state court's finding that Petitioner understood the appropriateness of the

8   modified instruction and the process the jury had gone through to make his decision.  To the

9   contrary, both of these things were explained to Petitioner and he expressed his

10  understanding of them.  To the extent Petitioner would disagree with this Court, he has not

11  explained how the record contradicts the Arizona Court of Appeals' finding of fact on this

12  issue.  Petitioner therefore has not presented this Court with clear and convincing evidence

13  of error concerning the Court of Appeals' factual finding and his objection is overruled.

14                     **d.      Objection 4**

15       The Court will address Petitioner's fourth factual objection—that the R&R

16  improperly concluded that Petitioner consented to his advisory counsel's participation at the

17  jury note conferences—during its legal analysis of Petitioner's self-representation claim.

18       **B.    Legal Objections**

19             **1.    Legal Standard**

20       Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

21  federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated

22  on the merits in state court proceedings" unless the state court decision was (1) contrary to

23  or (2) an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d);

24  see Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A decision by the state court is

25  contrary to clearly established federal law "if it applies a rule that contradicts the governing

26  law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially

27  indistinguishable from a decision of [the Supreme] Court but reaches a different result.

28  Brown v. Payton, 544 U.S. 133, 141 (2005).   For example, a state court's decision is

1   contrary to federal law if its predicated on the wrong standard of review or applies an

2   incorrect legal test to a claim. See Frantz v. Hazey, 533 F.3d 724, 737 (9th Cir. 2008) (en

3   banc) (finding a state court's decision was contrary to federal law where the state court

4   applied harmless error, instead of structural, review).

5       "A state-court decision involves an unreasonable application of this Court's clearly

6   established precedents if the state court applies this Court's precedents to the facts in an

7   objectively unreasonable manner." Brown, 544 U.S. at 141. An incorrect application of the

8   law is not necessarily unreasonable. Bell v. Cone, 535 U.S. 685, 694 (2002); Cooks v.

9   Newland, 395 F.3d 1077, 1080 (9th Cir. 2005) ("Such application must be objectively

10  unreasonable, which is different from incorrect."). Furthermore, only United States Supreme

11  Court holdings, and not dicta or concurring opinions, at the time of the state court's decision

12  are the source of "clearly established federal law" for the purpose of the "unreasonable

13  application" prong of federal habeas review. Williams v. Taylor, 529 U.S. 362, 412 (2000).

14  Circuit court holdings are relevant to resolution of a petitioner's habeas claims only to the

15  extent they are useful in deciding whether the law has clearly been established or that the

16  state court decision is an "unreasonable application" of United States Supreme Court

17  precedent, and not with regard to what constitutes a violation of constitutional rights. See

18  Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003) ("While circuit law may be persuasive

19  authority for purposes of determining whether a state court decision is an unreasonable

20  application of Supreme Court law ... only the Supreme Court's holdings are binding on the

21  state courts and only those holdings need be reasonably applied." (citations omitted)).

22          **2.    Discussion**

23              **a.    Objection: failure to review the whole record**

24      Petitioner contends that Magistrate Judge Aspey erred by failing to review the whole

25  record. The Ninth Circuit has explained that "[t]he record must show that the district court

26  examined all relevant parts of the state court record." Richmond v. Ricketts, 774 F.2d 957,

27  961 (9th Cir. 1985). In support of his argument, Petitioner asserts that the R&R omits any

28  reference to the trial court's direct appeal factual finding that:

1
2
3
4

> [T]he defendant's presence in answering the jury's question during deliberations was not necessary for 2 reasons. First, both the prosecution and defendant's liaison counsel were present. In light of the response the Court indicated it was going to make to the jury's question, neither counsel nor the Court felt that the defendant's presence was required. Second, the court did not answer the question, but, rather, simply directed the jury to rely on the evidence presented in reaching the ultimate determination of the issue.

5   This assertion, however, is factually incorrect, as this finding is block-quoted in full on page

6   five of the R&R, strongly suggesting Magistrate Judge Aspey examined the finding. (Doc.

7   19, p.5).   Additionally, having reviewed the R&R and the relevant parts of the state court

8   record itself, this Court finds that Magistrate Judge Aspey carefully considered the state

9   record in reaching his conclusions.  Accordingly, Petitioner's objection is overruled.

10                        **b.      Objection: Improper Deference**

11       Petitioner also argues that the R&R gave improper deference to the State Court's

12   factual finding that Petitioner consented to standby counsel's solo participation at the jury-

13   note conferences.  This objection must be rejected as it is based on a faulty premise; that the

14   objective correctness of a state court's factual findings influences the legal deference to

15   which they are owed.   Regardless of their objective correctness, a state court's factual

16   findings are always entitled to an initial presumption of correctness that can only be

17   overcome with clear and convincing evidence.   Miller-El, 545 U.S. at 239-40.

18                **c.      Objection 3: Failure to apply controlling federal law and
19                          unreasonable application of federal law concerning
                          Petitioner's self-representation claim.**

20       Petitioner alleges that the R&R erred by finding that the Arizona Court of Appeals'

21   rejection of his self-representation claim was neither clearly contrary to or an unreasonable

22   application of federal law.  The Supreme Court recognizes a constitutional right to self-

23   representation in criminal proceedings.  Faretta v. California, 422 U.S. 806 (1975).  The

24   Faretta right, however, is not necessarily violated by the appointment of standby, or advisory,

25   counsel.  Id. at 834 n.46 ("[O]f course, a State may -- even over objection by the accused --

26   appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to

27   be available to represent the accused in the event that termination of the defendant's

28   self-representation is necessary.").   In McKaskle v.   Wiggins, the Supreme Court

1   distinguished between the "permissible" and "impermissible" participation of standby

2   counsel; between participation that preserves the right to self-representation and that which

3   violates it. 465 U.S. 168, 173-74 (1984).  The Court found that Faretta imposed two distinct

4   limitations on the unsolicited participation of standby counsel: (1) "the *pro se* defendant is

5   entitled to preserve actual control over the case he chooses to present to the jury;" and (2)

6   "participation by standby counsel without the defendant's consent should not be allowed to

7   destroy the jury's perception that the defendant is representing himself."  Id. at 177.  The

8   McKaskle Court further  explained that the Faretta right is eroded when "standby counsel's

9   participation  over  the  defendant's  objection  effectively  allows  counsel  to  make  or

10  substantially interfere with any significant tactical decisions, or to control the questioning of

11  witnesses, or to speak instead of the defendant on any matter of importance."  Id. at 178.

12  Accordingly, a *pro se* defendant must be "allowed to address the court freely on his own

13  behalf and if disagreements between counsel and the *pro se* defendant are resolved in the

14  defendant's favor whenever the matter is one that would normally be left to the discretion of

15  counsel."  Id.

16              **i.      Contrary to Federal Law**

17          The Court turns first to Petitioner's contrary to federal law objections. Petitioner

18  argues that the R&R erred by failing to find that the Arizona Court of Appeals improperly

19  addressed Petitioner's Faretta claim under harmless error review.  This argument is clearly

20  incorrect, as the Arizona Court of Appeals *did* review Petitioner's McKaskle claim under the

21  rubric of structural error.  Specifically, at the outset of its review, the Court of Appeals noted

22  that "[e]rroneous denial of self-representation in a criminal case is a structural error."  (Exh.

23  C, at 42), and there is nothing in the decision that suggests that the appeals court did not

24  apply that standard. The Court of Appeals did not, for example, find an error, but determine

25  it was harmless.  Instead, it found no error.  This Court also notes that the Court of Appeals

26  identified and applied the correct governing Supreme Court precedents—McKaskle and

27  Faretta.  Finally, it must be stated that Petitioner's supplemental objections are predicated on

28  a recent Ninth Circuit case, Frantz v.  Haney, 533 F.3d 724 (9th Cir.  2008).  To the extent

Petitioner would have this Court label <u>Frantz</u> as controlling federal law, Petitioner's reliance on <u>Frantz</u> is misplaced.   It is well established that only Supreme Court precedent is controlling federal law under AEDPA.   <u>See</u> Clark, 331 F.3d at 1069 (9th Cir. 2003) (explaining that Ninth Circuit law is persuasive, but not controlling).

### ii.   Unreasonable Application of Federal Law

The Court turns next to whether the Arizona Court of Appeals reasonably applied the controlling law of <u>McKaskle</u> and <u>Faretta</u> to Petitioner's self-representation claim.  The Court begins its analysis by noting that the Arizona Court of Appeals correctly found that the second of <u>McKaskle's</u> two limitations concerning the participation of standby counsel—that standby counsel's participation should not destroy the jury's perception that the defendant is representing himself—was not relevant to Petitioner's claims, as the jury-note conferences did not occur in the presence of the jury.  465 U.S. at 177.   Instead, the relevant inquiry concerns whether Petitioner's non-participation in the jury-note conferences deprived Petitioner of his right to preserve actual control over the case presented to the jury.  <u>Id.</u>

In finding that Petitioner's <u>Faretta</u> rights had not been violated, the Court of Appeals explained:

> We are satisfied that Hearn's *Faretta* rights were adequately protected, satisfying the first standard outlined in *McKaskle*.  After modifying the jury verdict form, the court gave Hearn an opportunity to see and object to the form or make other objections.  Hearn clarified to the court that he understood the proceedings and that he had the opportunity to request further jury instructions. Hearn later informed the court he understood the appropriateness of the jury instruction, the process the jury had gone through to make a decision, and that he was prepared for the jury to be called.  Hearn was given ample opportunity to present his own position to the court.  He was given the opportunity to freely address the court on his own behalf.  In no circumstances did advisory counsel's position prevail over that of Hearn's nor was Hearn deprived of the opportunity to direct his own defense.

(Doc. 15, Exh. C, p. 46 (footnote omitted)).  The Court of Appeals' analysis makes clear that its determination that Petitioner's <u>Faretta</u> rights were "adequately protected" is predicated entirely on the colloquy ("the colloquy")  between the trial judge, petitioner, advisory counsel, and the prosecutor that began after the trial court went back on the record on the fourth day of trial.  The Court of Appeals, therefore, appears to have understood

1   McKaskle's dictate that a defendant must be allowed to preserve actual control over his case

2   as being completely satisfied by the opportunity to enter objections and make a record

3   provided to Petitioner during the colloquy.  This Court finds that the appellate court's

4   application of McKaskle in this manner, in the context of these facts, is not only incorrect,

5   but unreasonable.

6        In McKaskle, the Supreme Court emphasized "a defendant's right 'to have his voice

7   heard,' and to 'speak' for himself."  Frantz, 533 F.3d at 743 (quoting McKaskle, 465 U.S.

8   at 174,177); McKaskle, 465 U.S. at 174 ("A defendant's right to self-representation plainly

9   encompasses certain specific rights to have his voice heard.").  In the McKaskle framework,

10  the right to speak is not dignitary or symbolic; it is functional.  Speech is one of the primary

11  mechanisms through which a defendant preserves actual control over his case, which is the

12  "core of the Farretta right."  Id.  at 168.  "[T]he Farretta right is eroded" when a court

13  "effectively allows counsel to make or substantially interfere with any significant tactical

14  decisions, . . . or to speak *instead* of the defendant on any matter of importance," precisely

15  because the participation of standby counsel in that fashion deprives a *pro se* defendant of

16  control.  McKaskle, 465 U.S. at 178 (emphasis in original).  It follows that a defendant must

17  be permitted to speak at a time that does not divorce the right to speak from its function.  In

18  other words, a defendant must be heard when his voice can impact the tactical decision or

19  matter of importance at issue.  Were it otherwise, a *pro se* defendant would be relegated to

20  a passive participant in his own defense with others effectively speaking for him; a status that

21  directly contradicts McKaskle's emphasis on the active and controlling role a *pro se*

22  defendant must be permitted to play.  See, e.g., People v. Rosen, 81 N.Y.2d 237, 244 (1993)

23  ("By contrast, the status of a defendant who elects to proceed *pro se* changes dramatically.

24  The defendant has perforce *rejected a passive role and has chosen, for better or worse, to*

25  *participate actively in all aspects of the case.* Indeed, the law confers upon that defendant

26  'certain specific rights to have his [or her] voice heard.'" (emphasis added) (quoting

27  McKaskle, 465 U.S. at 168)).

28       It is not disputed that Petitioner was excluded from the jury-note conferences.  The

question therefore is whether the opportunity to speak (and object) afforded to Petitioner during the colloquy permitted him to be meaningfully heard on the subject of how the jury's questions should be answered.  This Court finds that it did not and could not.  The time to impact a decision is quite clearly before that decision has been made and implemented. Illustrating this principle, <u>McKaskle</u> mandates that trial judges must resolve "disagreements between counsel and the *pro se* defendant . . . in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel." 465 U.S. at 178.  In order to resolve such disputes in a *pro se* defendant's favor, a trial judge must hear from the *pro se* defendant before making and implementing a decision. By the time the colloquy occurred, both jury notes had already been discussed, answered, and given to the jury, and the jury had been provided with and used the amended verdict form.  Accordingly, when Petitioner was given an opportunity to speak, it was too later for his voice to influence the trial judge's response to the jury's questions.  Instead, at the time when Petitioner's voice could have meaningfully impacted the trial judge's decision making process, only advisory counsel's voice was heard.  Accordingly, even though Petitioner was given an opportunity to speak, advisory counsel was *effectively* allowed to speak for Petitioner concerning the jury notes, in clear violation of Petitioner's <u>Faretta</u> rights.

The Court's finding is not altered by the fact, that during the colloquy, the trial judge suggested, that if requested to do so by Petitioner, he would consider instructing the jury to continue deliberating until it reached a unanimous verdict.  Whether or not to make such a request presented Petitioner with a new and separate decision with its own unique set of strategic considerations.  Accordingly, the trial judge's willingness to consider further instructing the jury is not equivalent to having allowed Petitioner to weigh in on whether the new verdict form should have been issued at all.  Thus, while Petitioner was permitted to speak freely and present his own position on this new issue, it does not change or make up for the fact that he was not afforded that opportunity in the first instance, and that is what matters under <u>Faretta</u>.  As the Supreme Court has explained, "[i]n determining whether a defendant's <u>Faretta</u> rights have been respected, the primary focus must be on whether the

1  defendant had a fair chance *to present his case in his own way*." McKaskle, 465 U.S. at 177.

2  By allowing Petitioner to speak only after the jury notes had been discussed and answered,

3  the trial court deprived Petitioner of the chance to present his case in his own way concerning

4  how the trial judge should respond to jury's questions.  Likewise, Petitioner's acquiescence

5  and ultimate agreement with the trial judge's decision to amend the verdict form does not

6  ameliorate the Faretta violation.  Because Faretta and McKaskle focus on opportunity, not

7  results, a  *pro se* defendant's Faretta rights are violated even when the decision made by

8  standby counsel or a judge happens to be the same one a defendant would have advocated

9  for had he been given the opportunity to exercise his rights.  See Frantz, 533 F.3d at 744

10 ("[W]hether or not [standby counsel] accurately relayed Frantz's position on [the jury

11 question] is not dispositive of Frantz's [Faretta] claim."); United States v. McDermott, 64

12 F.3d 1448, 1453-54 (10th Cir. 1995) (holding that a defendant's rights were violated by his

13 exclusion from sidebar conferences even though the defendant did not assert that he would

14 have conducted the conference differently than did the attorney who participated in his

15 stead).

16      This Court finds therefore that Petitioner's non-participation in the jury-note

17 conferences violated his Faretta rights, and that the colloquy did not and could not ameliorate

18 that violation.  Although McKaskle did not involve a factually analogous situation, "rules of

19 law may be sufficiently clear for habeas purposes even when they are expressed in terms of

20 a generalized standard rather than as a bright-line rule."  Williams v. Taylor, 529 U.S. 362,

21 382 (2000).  McKaskle makes clear that a  *pro se* defendant must be permitted to have his

22 voice heard on matters of importance.  Because the colloquy was held after the pertinent

23 decisions had already been made and implemented, the Court of Appeals' finding that the

24 colloquy provided such an opportunity and adequately protected Petitioner's Faretta rights

25 was both incorrect and unreasonable.  Having so determined, the Court must now "resolve

26 the claim without the deference AEDPA otherwise requires."  Panetti v. Quarterman, 551

27 U.S. 930, 953 ( 2007).  Given that this Court has already found a Faretta violation, there

28 remain only two issues to discuss: (1) whether Faretta applied to the jury-note conferences

1    at all; and (2) whether Petitioner waived his <u>Faretta</u> rights by consenting to advisory
2    counsel's solo participation in the jury-note conferences.

### a.    <u>Faretta</u> applied to the jury-note conferences

4            The Arizona Court of Appeals did not expressly consider whether <u>Faretta</u> applied to
5    the jury-note conferences.  The appeals court, however, rejected Petitioner's claim on the
6    grounds that the colloquy permitted Petitioner to exercise his <u>Faretta</u> rights.  By resolving
7    Petitioner's claim in this manner, the Court of Appeals appears to have assumed that <u>Faretta</u>
8    applied, and this Court agrees.

9            Formulation of a response to a jury question does not concern the type of routine tasks
10    for which standby counsel's unsolicited participation is permissible.  <u>See</u> <u>McKaskle</u>, 465
11    U.S. at 953–4 (stating that standby counsel may assist a defendant  in two ways without
12    infringing the defendant's <u>Faretta</u> rights: (1) "in overcoming routine procedural or
13    evidentiary obstacles to the completion of some specific task, such as introducing evidence
14    or objecting to testimony, that the defendant has clearly shown he wishes to complete,"; and
15    (2) by "help[ing] to ensure the defendant's compliance with basic rules of courtroom protocol
16    and procedure.").  Instead, how such a question is answered is a matter of great importance.
17    <u>Frantz</u>, 533 F.3d 742  ("The chance to shape the jury's interpretation of an important tactical
18    decision is at least as important as the chance to make the decision itself."); <u>United States v.</u>
19    <u>Frazin</u>, 780 F.2d 1461, 1469 (9th Cir. 1986) ("[a] defendant's participation in formulating a
20    response to a deadlocked jury, whether through his counsel or by his personal presence as
21    well, may  be important to ensuring the fairness of the verdict.").  Accordingly, excluding
22    a defendant from participating in a jury-note conference appears to be inconsistent with
23    <u>McKaskle's</u> mandate that a defendant must be permitted to speak on any matter of
24    importance and make all significant tactical decisions.  <u>McKaskle</u>, 465 U.S. at 174.  The
25    Court's interpretation of <u>McKaskle</u> is supported by two recent decision from this circuit.  In
26    <u>Frantz v. Hazey</u>, a defendant was excluded from an in-chambers conference concerning a
27    jury question.  533 F.3d at 729.  The Ninth Circuit held that this "unconsented-to exclusion"
28    so  "substantially reduce[ed the defendant's] ability to shape and communicate his own

defense as to violate his Faretta rights." Id. at 740. Likewise, in Torres v. Uttecht, a Western District of Washington court found that a judge's failure to translate a jury question for a pro se defendant and consult with him about how the question should be answered violated the defendant's Faretta rights. 545 F. Supp. 2d 1141, 1145 (W.D. Wash. 2008) ("[I]f a trial court must respect the right of a *pro se* defendant 'to make motions, to argue points of law, to participate in voir dire, [and] to question witnesses,' then it would be inconsistent with this right to exclude such a defendant from participating in the crucial matter of how to resolve an issue raised during jury deliberations . . .." (quoting McKaskle, 465 U.S. at 174) (internal citations omitted)).

There is, however, no per se rule concerning the application of Faretta to a jury-note conference, and "[i]n some cases, it may be that standby counsel can 'erode' Faretta rights without violating them." Frantz, 533 F.3d at 742 (citing  and quoting United States v. McDermott, 64 F.3d 1448, 1454 (10th Cir. 1995) ("[McKaskle] "seems to stop short of a per se rule when it states that [standby counsel's interference in such matters] only 'erode[s]' Faretta rights. 'Erode' is not a synonym for 'violate.'"). In Frantz, the Ninth Circuit suggested that Faretta could be eroded, but not violated, when a defendant is prevented from participating in an in-chambers proceeding that does not involve "'any significant tactical decisions' or 'any matter of importance.'" Id. (quoting McKaskle, 465 U.S. at 178). The Frantz Court, however, found that the case before it was not a close call, as the jury question at issue—the jury requested it be allowed to listen to a 9-1-1 tape—very clearly concerned a matter of strategic importance. Id. Likewise, this Court finds that the jury-note conferences in this case concerned important matters requiring tactical decisions and, as a result, Faretta applied.

While the jury questions in this case concerned a matter of arguably less import than the one at issue in Frantz, they were by no means unimportant. In Torres, the Western District of Washington court explained that "how to resolve an issue raised during jury deliberations," is "crucial," especially when that question " indicate[s] the jury was struggling to resolve a lack of unanimity on the various charges." 545 F. Supp. at 1145. Therein the

1   defendant was charged with second degree assault with a firearm and the lesser included

2   offense of unlawful possession of a firearm.  Id. at 1142.  The jury sent a question to the

3   judge informing him that everyone agreed on the lesser included offense, but that three jurors

4   planned to vote "no" on the assault charge.  Id.  The jury wanted to know if it could still

5   convict on the lesser included offense in the event that the three jurors changed their minds

6   on the assault charge and decided to vote "yes."  Id.  The trial judge instructed the jury to

7   follow the instructions without asking for the defendant's input or translating the jury-

8   question for him.  Id.  The district court found that the trial court's actions violated Faretta.

9   Id. at 1145.

10          As in Torres, the jury questions in this case concerned how the jury should resolve its

11   lack of unanimity on a charge.  The Court agrees with the Torres court's characterization of

12   such a question as crucial and important enough to trigger Faretta.  A question from a

13   deadlocked jury is crucial because the court's response to the jury's question may well affect

14   the jury's verdict on the charge in question.  Therefore, formulating an answer is undoubtedly

15   a matter of importance and one ripe with tactical considerations.  The trial court appeared to

16   appreciate this fact, as evidenced by its repeated attempts to explain to Petitioner that

17   instructing the jury that it could answer undecided was good for Petitioner and making it

18   deliberate to a verdict would likely be bad for him.  While the trial court felt, correctly, that

19   the bets tactical choice was obvious, there was still a tactical choice that needed to be made.

20   That potentially bad choices existed that could have placed Petitioner in peril of being found

21   guilty only serves to demonstrate the importance of the jury's questions.  Accordingly, the

22   Court finds that Faretta applied to the jury-note conferences that occurred in this case.

23                              **b.**     **Consent**

24          Before relief can be granted, the Court must address one final issue: whether

25   Petitioner consented to advisory counsel's participation in the jury-note conferences.  A

26   defendant who consents, either expressly or implicitly, to standby counsel's participation

27   waives his Faretta rights.  McKaskle, 465 U.S. at 182 ("A defendant's invitation to counsel

28   to participate in the trial obliterates any claim that the participation in question deprived the

1    defendant of control over his own defense."); <u>Frantz</u>, 533 F.3d at 744. Magistrate Judge

2    Aspey briefly addressed this issue of consent in the R&R.  Therein he concluded that the

3    Court of Appeals found as fact that "that Petitioner acquiesced to standby counsel's

4    participation in the in-chambers conferences," (Doc. 19 at 24), and "consented to standby

5    counsel's solo participation in the chambers conference regarding at least the first jury

6    question." (<u>Id.</u> at 25).  Petitioner objected to the R&R's findings regarding consent, and the

7    Court agrees with his objection.

8           The Court of Appeals did not find that Petitioner consented to advisory counsel's

9    participation in the jury-note conferences.  Instead, the Court of Appeals found that Petitioner

10   was aware of the first jury question and was given an opportunity to "object to the [amended

11   verdict] form or make other objections." (Doc. 15, Exh. C, p. 46 (footnote omitted)).

12   Awareness and consent are not synonyms.  It is possible that Petitioner was aware of the

13   jury-note conferences, but had not consented to standby counsel's participation in them.

14   <u>See</u> <u>Frantz</u>, 533 F.3d at 743.  Likewise, Petitioner's failure to object to advisory counsel's

15   participation in his stead also does not equate with consent.  "<u>McKaskle</u> does not place the

16   burden on *pro se* defendants to regulate each of their standby attorneys' actions. To the

17   contrary, <u>McKaskle</u> limits standby counsel's 'unsolicited participation' during critical

18   proceedings." <u>Frantz</u>, 533 F.3d at 744 (quoting <u>McKaskle</u>, at 177).  "When standby counsel

19   is appointed only to advise, the initial invocation of the right of self-representation is

20   generally sufficient to establish that any participation by standby counsel other than for the

21   routine matters mentioned in <u>McKaskle</u> is 'over the defendant's objection.'" <u>Id.</u> (quoting

22   <u>McKaskle</u>, at 178).[4]  Because the Court of Appeals did not find that Petitioner consented to

23

24          [4]As part of its discussion of Petitioner's critical stage claim, the Arizona Court of
25   Appeals stated: "The Court informed Hearn that he had an opportunity to object and
     explained the implications of the communication with the jury.  Hearn did not object to his
26   absence when given an opportunity to do so.  Therefore, Hearn waived any objection to his
     absence from the chambers.  <u>Dann</u>, Ariz. at 572" (<u>Id.</u>, Exh. C, p. 9).  The Arizona Court of
27   Appeals' finding that Hearn waived his critical-stage claim by not objecting is a legal
28   conclusion that applies to Petitioner's due process claim.  It is predicated on Arizona law

1    advisory counsel's participation in the jury-note conference, this Court need not overturn a

2    state court finding of fact to address this issue.

3          Because the Court of Appeals did not make a factual finding on consent, that task

4    falls to this Court, and it will look first at the matter of implied consent.  Implied consent

5    occurs when "a *pro se* defendant's solicitation of[,] or acquiescence in[,] certain types of

6    participation by counsel substantially undermines later protestations that counsel interfered

7    unacceptably."  Id.    Additionally, "[o]nce a *pro se* defendant invites or agrees to any

8    substantial participation by counsel, subsequent appearances by counsel must be presumed

9    to be with the defendant's acquiescence, at least until the defendant expressly and

10   unambiguously renews his request that standby counsel be silenced." Id. at 183.  The Court

11   has reviewed the entirety of the trial record and finds nothing therein to suggest that

12   Petitioner impliedly waived his Faretta rights.  Petitioner was an active participant in all

13   aspects of his trial.  He submitted and argued a number of pretrial motions.  During trial,

14   Petitioner fully embraced and performed his role as attorney.  He examined and cross-

15   examined witnesses, responded to and made objections, submitted jury instructions, and

16   made closing and opening arguments. Of particular importance, Petitioner fully participated

17   in all discussions concerning the content of the final jury instructions.  See Frantz, 533 F.3d

18   at 745 (noting implied consent to his counsel's participation in a jury-note conference seemed

19   unlikely in part because the defendant "fully participated in the primary discussion regarding

20   final jury instructions."). Far from being substantial, advisory counsel's participation appears

21   to have been almost non-existent.  In almost every instance it was limited to off-the record

22   consultations.  In short, Petitioner exercised control over all aspects of his case, and to the

23   extent standby counsel participated, it was not nearly substantial enough to give rise to a

24   finding of implied consent.

25          Turning next to express consent, Respondents assert that "[f]rom the statements made

26   by the trial court and Petitioner at the post-deliberations discussion, it is clear that Petitioner

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28   concerning due process and therefore unrelated to Faretta right to self-representation.

authorized advisory counsel to represent him during the jury note conferences and Petitioner was only to be 'kept abreast' of the proceedings." (Doc. 15).   This Court disagrees with Respondents' reading of the record.   The trial court made no finding of express consent during the colloquy.   It never asked Petitioner if he had authorized advisory counsel to participate in is stead at the jury-note conferences, and Petitioner never stated that he gave such permission.  While the trial judge did say,  "I know you have been kept abreast by your attorney of where we are," this court has already explained that Petitioner's awareness of what occurred during the jury-note conferences, like his failure to object, is not dispositive concerning the issue of consent.

Contrary to Respondent's position, that Petitioner did not waive his rights is suggested by the trial court's response to Petitioner's motion for a new trial, wherein Petitioner first alleged his <u>Faretta</u> rights had been violated.  (Doc. 15, Exh. A, p.44).  In rejecting this claim, the trial court stated: "In light of the response the Court indicated it was going to make to the jury's question, *neither counsel nor the Court felt that the defendant's presence was required*. Second, the court did not answer the question, but, rather, simply directed the jury to rely on the evidence presented in reaching the ultimate determination of the issue."  (<u>Id.</u>, Exh. A, Minute Entry Order of 11/29/04 (emphasis added)).   Contrary to Respondent's position, the trial court's explanation of Petitioner's exclusion from the jury-note conferences strongly suggests that the trial court simply decided that the jury's questions were not important enough to merit Petitioner's participation, not that Petitioner consented to his non-participation.[5]

This version of events is supported by the affidavit Petitioner attached to his supplemental objections to the R&R.  (Doc. 26).  Therein, Petitioner states that he learned

---

[5]The trial court's contention that it did not answer the jury's question is incorrect. The trial court answered both questions with a written response.  The fact that the trial court did not give the jury further guidance beyond "follow the instructions" does not render those responses non-answers.  Even assuming, however, that the trial court did not answer the questions, its rationale missed the point.   Absent his consent, Petitioner should have been allowed to have his voice heard concerning how the jury questions should be answered.

of the first jury question only after the trial court had provided the jury with a response.  He

states that advisory counsel Goldstein came to his cell, informed Petitioner of the substance

of the question and the judge's answer, and told Petitioner that he entered the following

objections: (1) he was not the counsel of record, as Petitioner was *pro se*; (2) he was not

Petitioner's advisory counsel, Blieden was; (3) he objected to the absence of a court reporter;

and (4) and that he objected to the manner in which the judge elected to proceed.  Petitioner

further affirms that he asked Goldstein to convey to the trial judge that (1) he wanted to come

back into the court room and go on the record; (2) he objected to the judge addressing the

jury without seeking his input; and (3) he wanted a mistrial in response to the violation of his

rights.  Finally, Petitioner claims that his conversation with Goldstein was the last contact he

had with any attorney before the case went back on the record for the colloquy.  While the

Court cannot confirm much of Petitioner's statements because there is no record of the jury-

note conferences, his affidavit does comport with the statement Petitioner made during the

colloquy that he was aware of only the jury's first question.

The evidence before the Court suggests that Petitioner did not give advisory counsel

permission to represent him at the jury-note conferences.  The record, however, does not

contain enough evidence for this Court to make a definitive determination, and the fact of

Petitioner's consent is disputed by the Parties.  Most importantly, as in Frantz, the Court is

without "specific evidence concerning the circumstances that gave rise to [advisory

counsel's] solo participation in the chambers conference concerning the jury's request[s]."

Frantz, 533 F.3 at 746. To alleviate this gap in the record, the Court will hold an evidentiary

hearing.  Under AEDPA, if "the applicant has failed to develop the factual basis of a claim

in State court proceedings, the court shall not hold an evidentiary hearing."  28 U.S.C. §

2254(e)(2).  The phrase "failed to develop" denotes a lack of diligence, and "[d]iligence for

purposes of [28 U.S.C. § 2254(e)(2) ] depends upon whether the prisoner made a reasonable

attempt, in light of the information available at the time, to investigate and pursue claims in

state court; it does not depend ... upon whether those efforts could have been successful."

Williams v. Taylor,  529 U.S. 420, 436 (2000).  An evidentiary hearing is allowable because

1   Petitioner's failure to develop the record was not due to a lack of diligence or "in any way
2   the fault of the petitioner." <u>Frantz</u>, 533 F.3d at 745.  Because Petitioner raised his <u>Faretta</u>
3   claim on direct appeal, he was not permitted to re-litigate it during the Rule 32 phase of the
4   proceedings, the collateral-attack phase at which an evidentiary hearing would have been
5   available to him.  <u>See</u> Ariz. R. Crim. P. 32.2 (precluding a defendant from raising in a Rule
6   32 petition any claim "[f]inally adjudicated on the merits on appeal or in any previous
7   collateral proceeding.").

8          The evidentiary hearing will be for the limited purpose of determining whether or not
9   Petitioner expressly consented to standby counsel's solo participation at the jury-note
10  conferences.  Because this Court has determined that an evidentiary hearing is necessary, it
11  must appoint counsel to represent Petitioner, if Petitioner is indigent.  <u>United States v.</u>
12  <u>Duarte-Higareda</u>, 68 F.3d 369, 370 (9th Cir. 1995) (stating that appointment of counsel is
13  mandatory in Section 2254 and 2255 cases which require evidentiary hearings for indigent
14  petitioners (citing Rule 8(c) of the Rules Governing Section 2255 Proceedings in the United
15  States District Courts)).  Because Petitioner paid the $5 filing fee for the instant Petition,
16  (Doc. 1), the Court is without sufficient information to determine if Petitioner is indigent.
17  Notwithstanding the issue of indigence, the Court finds that appointment of counsel,
18  regardless of Petitioner's indigence, is warranted and appropriate in this matter.  18 USCS
19  § 3006A (noting that a district court can appoint counsel when "the court determines that the
20  interests of justice so require."); <u>Jeffers v. Lewis</u>, 68 F.3d 295, 297-298 (9th Cir. 1995)
21  ("Indeed, we have long recognized a nonstatutory right to appoint counsel for indigent
22  habeas petitioners when our review of the record suggested that they could not adequately
23  present their own cases." (citing <u>Anderson v. Heinze</u>, 258 F.2d 479 (9th Cir. 1958)).
24  Because, however, Petitioner has represented himself in the past, the Court will not appoint
25  counsel over Petitioner's objection, unless required to do so by Petitioner's indigence.
26  Accordingly, if Petitioner wishes to have counsel appointed, he merely needs to notify this
27  Court in writing.  If Petitioner does not wish to have counsel appointed—something the
28  Court strongly recommends against—Petitioner must demonstrate he is not indigent by

1   completing and returning the District of Arizona document entitled, <u>Affidavit Accompanying</u>

2   <u>Motion for Permission to Appeal in Forma Pauperis</u>, which will allow Petitioner to document

3   his financial condition.   If Petitioner fails to comply with either of these directives within

4   thirty days of the date of this Order, the Court will assume he consents to the appointment

5   of counsel, and counsel will be appointed.

6           **Accordingly,**

7           **IT IS HEREBY ORDERED** adopting in part and rejecting in part the Magistrate

8   Judge's Report and Recommendation. (Doc. 19).  The Court adopts the Magistrate Judge's

9   reasoning and recommendations on all of Petitioner's claims, with the exception of

10  Petitioner's claim for denial of his constitutional right to self-representation.

11          **IT IS FURTHER ORDERED** that if Petitioner wishes this Court to appoint counsel,

12  he must notify the Court within thirty days of the date of this Order.

13          **IT IS FURTHER ORDERED** that if Petitioner does not wish counsel to be

14  appointed, he must demonstrate that he is not indigent by completing and returning the

15  attached <u>Affidavit Accompanying Motion for Permission to Appeal in Forma Pauperis</u>

16  within thirty days of the date of this Order.  The Clerk of the Court is directed to send

17  Petitioner the <u>Affidavit Accompanying Motion for Permission to Appeal in Forma Pauperis</u>

18  when it sends Petitioner this Order.

19          **IT IS FURTHER ORDERED** that if Petitioner neither notifies this Court that he

20  wishes to be appointed counsel, nor completes the <u>Affidavit Accompanying Motion for</u>

21  <u>Permission to Appeal in Forma Pauperis</u> within thirty days of the date of this Order, the

22  Court will appoint counsel.

23  **/ / /**

24

25

26

27

28

1   **IT IS FURTHER ORDERED** that an evidentiary hearing will be held to consider

2   whether Petitioner expressly consented to standby counsel's solo participation at the jury-

3   note conferences.  The evidentiary hearing will be scheduled after the matter of whether

4   Petitioner will be represented by counsel is resolved.

5   DATED this 31st day of March, 2011.

6

7

8   Mary H. Murguia
    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28